Homer E. SUDHEIMER, Plaintiff in Error,

v.

Henry L. CHEATHAM, Defendant in Error.

No. 41139.

Supreme Court of Oklahoma.

July 9, 1968.

William A. Vassar, Chandler, for plaintiff in error.

P. D. Erwin, Chandler, for defendant in error.

PER CURIAM.

The plaintiff alleged that he was the owner of the SE/4 of the SE/4 of Section 18, Township 14 North, Range 3 East, of the Indian Meridian in Lincoln County, Oklahoma, but that the defendant wrongfully withheld from him two portions thereof, to-wit:

"A strip on the North side thereof 175 feet wide on the West end and about 5 feet on the East end, containing about 2⅔ acres,

which tract shall be hereinafter referred to as the "North Tract."

"The West 45 feet of the premises containing about 1½ acres,

which tract shall be hereinafter referred to as the "West Tract."

The defendant's answer asserted that he and his predecessors in title had acquired title to the two tracts in controversy by adverse possession for more than fifteen years prior to the commencement of the action.

The jury returned a verdict in favor of the plaintiff in respect to the "North Tract," supra, but denied him recovery of possession of the "West Tract," and judgment was entered in accordance with the verdict by the trial court. The defendant has appealed, asserting in substance that the verdict of the jury is unsupported by the evidence. Since the plaintiff has taken no appeal from that part of the judgment which denied to him recovery of possession of the "West Tract" we shall now proceed to examine the evidence only insofar as it pertains to the "North Tract."

In 1901, Mary Jezewski obtained title to all of the SE/4 of Section 18, Township 14 North, Range 3 East, of the Indian Meridian in Lincoln County, Oklahoma, from the United States. Upon the death of Mary Jezewski pursuant to the terms of her will the SE/4 of Section 18 was distributed on October 28, 1932, to her three children and her grandchild, John Charles Fibikowski, a minor about four years of age, who received as his sole interest the SE/4 of the SE/4 of Section 18, which premises is the same as that claimed by the plaintiff in the instant case.

In 1935, the children of Mary Jezewski sold their interest in the N./2 of the SE/4 and the SW/4 of the SE/4 of Section 18 to John Seba, who immediately in turn conveyed the same to George Sudheimer. Upon the latter's death in 1959, his estate was distributed in February 1960 to his five children, one of

whom was the defendant, Homer E. Sudheimer. In September 1960, the other heirs conveyed their interest in the N/2 and the SW/4 of the SE/4 of Section 18 to Homer E. Sudheimer. In July 1962, John Charles Fibikowski (Febicoski) sold his interest in the SE/4 of the SE/4 of Section 18 to the plaintiff, Henry L. Cheatham.

In 1927, Mary Jezewski owned all of the SE/4 of Section 18. At that time her son, Mike Fibikowski, occupied all or a portion of this property, the record not being clear upon the point. In that year he married the witness, Mrs. Ahrens, who testified that shortly prior to their marriage Mike had constructed the fences in controversy. By way of clarifying the situation it may be observed that the SE/4 of the SE/4 of Section 18 is traversed by Spring Creek which runs from a point near the SW/4 corner thereof North in a slightly Easterly direction until it approaches the North line, at which point it turns to the East at about a 45 degree angle so that the West bank of the creek intersects the North line at a point approximately midway between the Northwest and Northeast corners of the SE/4 of the SE/4 of Section 18. It appeared that the fence so constructed commenced at a point 45 feet East and 175 feet South of the Northwest corner of the 40 acres in question, and then proceeded East and slightly North a distance of 530 feet to a point on the West bank of Spring Creek. The defendant testified that, although there was no fence proceeding in a Northeasterly direction from the latter point along the West bank of the creek, to the North line of the 40 acres at the time of the trial, about 15 years before (1959) he had caused that portion of the fence to be bulldozed out in order to remove brush that was causing the creek to flood. We deem it significant that although the West fence was parallel to the West line of the SE/4 of the SE/4 of Section 18, that the North fence was not parallel to the North line. The West fence constructed by Mike in

1927 proceeded from the point of beginning above indicated South and parallel to the West line of the 40 acres in question an undetermined distance, but not to the South line thereof. Later at some unspecified time the fence was extended to the South line. One witness testified that Mary Jezewski's house was situated East of the West fence which had been constructed "to keep the stock out of her yard." A number of witnesses testified that the fence lines had been in existence for varying periods of time back to 1927 and the plaintiff himself testified that they had existed to his knowledge for more than 20 years prior to the suit. It further appeared that the North fence line running along the South boundary of the "North Tract" was in a state of disrepair at the time of trial with fence posts missing and the wire lying upon the ground. It also appeared that there are a number of trees located upon the fence line 8 inches or so in diameter in which the wire could be seen embedded as shown by photographs introduced in evidence. The defendant admitted, however, that for at least 15 years prior to the trial that the fence was in no condition to turn cattle. It further appeared that the land both below and above the fence was in pasture.

It is fundamental that the party relying on adverse possession has the burden of proving all facts necessary to establish such a title for the full statutory period of 15 years: Kelly v. Choate, 192 Okl. 397, 136 P.2d 885; Russell v. Davidson, 200 Okl. 408, 194 P.2d 887; and Farris v. Smallwood, 204 Okl. 123, 227 P.2d 644. Moreover, this court has held in Reinhart and Donovan Company v. Missouri-Kansas-Texas Ry. Co., 187 Okl. 661, 105 P.2d 541, as follows:

"The doctrine of adverse possession is to be taken strictly. Such a possession is not to made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner."

This court has further held in Coats v. Riley, 154 Okl. 291, 7 P.2d 644, as follows:

"If the one in possession recognizes the title of one out of possession, at any time prior to the expiration of the period provided by the statutes of limitation, the continuity of the adverse possession is broken. * * * A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants."

We now direct our attention to the evidence directly dealing with the question of adverse possession. It is undisputed that the plaintiff and his predecessor in interest have at all times held legal title to the tract in controversy. It was also shown that the plaintiff paid the ad valorem taxes for the two years prior to the trial and his predecessor had paid them from 1946 to 1963, inclusive, except for the years 1951 to 1958, when it was claimed as a homestead and no tax was due. These, while not conclusive, are facts bearing upon the question of adverse possession which the jury could and should consider. It is quite clear from the evidence that when the fences were erected they represented interior as opposed to exterior fences within the farm which covered all of the SE/4 of Section 18, and was at that time owned by Mary Jezewski until her death in 1931. By the terms of her will the 40 acres in question was devised to her grandchild, John Charles Fibikowski, a minor of about 4 years of age. Apparently he was later placed under the guardianship until he attained legal age. The other three-quarters of the farm were separately devised by the testatrix to her three children. There is absolutely no evidence in the record to suggest that any of those children ever adversely claimed the "North Tract" in controversy as

against the minor. It is apparent that the question of adverse possession could not possibly arise until the death of Mrs. Jezewski. The minor's mother, Mrs. Ahrens, testified that she resided on the 40 acres in question from 1927 until about 1934, from 1950 to 1955, and again in 1959. She stated that to the best of her knowledge the fences in controversy had always been considered boundary lines of the 40 acres and that she had never heard anybody suggest otherwise. In contrast to this testimony, however, it appears that the three children of Mrs. Jezewski conveyed their interests in the SW/4 of the SE/4 and the N/2 of the SE/4 of Section 18 to one Seba in 1935 and the latter immediately conveyed the same to George Sudheimer, the father of the defendant. About 1939 the defendant rented the SW/4 of the SE/4 of Section 18 from his father. The record, however, does not reveal whether or not he ever rented the N/2 of the SE/4 of Section 18 also. Furthermore, the record is bare of any suggestion that George Sudheimer, who died in 1959, ever by virtue of owning the NE/4 of the SE/4 of Section 18 asserted any title to or adverse possession of the "North Tract" in controversy. We follow the reasoning of the Supreme Court of Oregon which held in Anderson v. Richards, 100 Or. 641, 198 P. 570, as follows:

"In a number of cases this court has held that, where a person enters and occupies land not embraced in his title, claiming it as his own for the statutory period of 10 years, he acquires title thereto, though his entry and possession was under a mistake.

"However, if the evidence shows that possession was held under mistake or ignorance as to his true line, and with no intention to claim beyond the true line when discovered, such possession is not adverse, and cannot ripen into a title as against the real owner."

Finally, and we regard this as of considerable significance, the defendant himself admitted that he rented the "North Tract" in controversy from John Charles Fibikowski, the then record owner thereof, from about the year 1955 to 1958 or possibly 1959 (when he bulldozed out the fence along the creek). Accordingly, upon examination of the entire record we are unable to agree with the contention of the plaintiff in error that the verdict of the jury and the judgment of the trial court is not supported by the evidence.

Judgment affirmed.

This Court acknowledges the services of G. C. Spillers, Jr. who with the aid and counsel of Villard Martin, Jr. and Jack N. Hays, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

All Justices concur.