1998 OK 90

Angelina KROSMICO, Trustee of the Judith Zellar Trust, Appellee,

v.

Bill PETTIT and his Spouse, Appellants,

Board of County Commissioners of Pittsburg County, Oklahoma and Johnnie Mae Griffin, County Treasurer of Pittsburg County, Oklahoma, The State of Oklahoma ex rel. Oklahoma Tax Commission, Defendants.

No. 88152.

Supreme Court of Oklahoma.

Sept. 22, 1998.

W.H. Layden, McAlester, for Appellee, Angelina Krosmico.

M. Todd Konsure, Craig H. Carter, McAlester, for Appellant, Bill Pettit.

SUMMERS, Vice Chief Justice.

¶ 1 In dispute are two lots, record title to which is in Defendant by reason of his having obtained a resale tax deed from the County, but the uninterrupted possession of which has been had by the Plaintiff for more than fifteen years since the tax deed was executed. We find that the evidence supports the trial court's judgment in favor of the Plaintiff based on adverse possession.

■ ¶ 2 Plaintiff Krosmico, trustee of the Zellar Trust, is the daughter of Richard and Mary Zellar. She filed this action in 1995 to quiet the title to two lots her parents mistakenly thought they had purchased, but which had been fenced and used the same as other lots which they had in fact purchased. The principal Defendant is Pettit, who in 1963 obtained a resale tax deed to the two lots. To the Plaintiffs' petition Pettit responded by seeking to quiet his own title.[1]

¶ 3 After a non-jury trial the lower court entered judgment for the Plaintiff. The Court of Civil Appeals affirmed, relying in part on a theory we need not develop. We vacate the appellate court's opinion, but also affirm.

¶ 4 The property involved in this dispute at issue are lots 1 and 2 of Block 86, Alderson Addition of Pittsburgh County, State of Oklahoma. Richard and Mary Zellar began purchasing property adjacent to their home in 1919, and continued until 1944. Krosmico testified that when the family made a land purchase in 1928 they thought that the two lots were part of the purchase. The Zellars never purchased Lots 1 and 2, but enclosed all of their property within fencing, and included the two contested lots within the fenced area. The Zellars' residence was not on the two lots, but within the larger fenced area. The diagram attached as an appendix to the opinion shows the fenced property, with the locations of the Zellar home and the two lots in dispute.

¶ 5 At the time of trial a boundary fence on one side of the Zellar property was relatively new, and some others were somewhat dilapidated. Krosmico testified that she had installed some new fencing to replace an older fence. She also testified that the boundary fence lines at the time of trial were

---

1. Pettit's counterclaim is more properly characterized as one in ejectment. A party having title to property and claiming right of possession obtains relief by an action in ejectment provided by 12 O.S.1991 § 1142. *Todoroff v. Burton*, 1985 OK 74, ¶ 7, 719 P.2d 456, 457. A trial action to quiet title, such as Krosmico's, is pursuant to 12 O.S.1991 § 1141. *Id.*

the same as they had been as for as long as she could remember, since approximately 1930. She stated that certain gates in the fences had been present as long as she could remember, and that at various times during her lifetime she had repaired all of the boundary fences.

¶ 6 One witness testified that her property was adjacent to a portion of the north side of the Zellar property.[2] She stated that she had lived in Alderson all her life and that she was eighty-one years old. According to her the property within the Zellar fence line had been known locally as the Zellar property for at least thirty years.

¶ 7 The Zellars used their land and the two lots for raising cattle. Brush had been cleared from the lots by the Zellars and they had fertilized the property. One witness testified that he had been familiar with the Zellar property since 1956. He had worked for the Zellars to take care of cattle and repair fences. He stated that he left that employment in 1973 or 1974, that he was at the Zellar property a few days before trial, and that the fences were "in the same exact location" as when he worked for the Zellars. He stated that when he worked on the property lots 1 and 2 of Block 86 had always been enclosed within the Zellar boundary fence, and that cattle grazed on those lots.

¶ 8 In 1989 Krosmico discovered that her family had not paid taxes on the two lots, that Pettit had purchased lots 1 and 2 by way of a resale tax deed in 1963, and had paid taxes on the property since that time. Pettit had also participated in the drilling of an oil and gas well located in the same governmental section as the property (but not on the lots in question). He participated again when the well was drilled to a deeper depth. Additional testimony was that no roads were open adjacent to the lots, and while Pettit had driven in the area, he had never physically been on the property. Pettit did not give the Zellars or Krosmico permission to use the property.

¶ 9 In 1995 Krosmico sued, claiming that her family had title to the property by adverse possession, and requested that title be quieted in a family-related trust. The trial court determined that the Zellar family had adversely possessed the property for more than fifteen years preceding the filing of Krosmico's petition. The court concluded that Pettit's counterclaim for "quiet title" was barred by the five year limitations period in 12 O.S. § 93(3).[3] The trial court quieted title in Krosmico.

¶ 10 The Court of Civil Appeals affirmed the judgment of the trial court. The majority of the certiorari arguments involve the limitations issue. However, even if we assumed for the purpose of argument that Pettit's counter-claim to "quiet title" was not barred by the limitations statute, Pettit would still receive no relief. This is because evidence was before the trial court that the Zellars/Krosmico adversely possessed the property for at least a fifteen year period occurring **after** Pettit obtained title in 1963 and before the suit was filed in 1995. Thus, the judgment quieting title in Krosmico is not contrary to the clear weight of the evidence. For this reason we need not concern ourselves with how § 93(3) is applied in cases

---

2. The north side of Lot 1 of Block 86 forms a portion of the north side of one of the Zellar property boundary fences. An east-west unopened road is platted on the north side of lot 1. The boundary fence runs along the north boundary of the road instead of the south boundary of the road (north boundary of lot 1).

3. 12 O.S.1991 § 93 provides in part that:
    Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed after the cause of action shall have accrued, and at no other time thereafter:

(3) An action for the recovery of real property sold for taxes, within five (5) years after the date of the recording of the tax deed, except where lands exempt from taxation by reason of any Act of the Congress of the United States of America have been sold for taxes, in which case there shall be no limitation; provided, nothing herein shall be construed as reviving any cause of action for recovery of real property heretofore barred nor as divesting any interest acquired by adverse possession prior to the effective date hereof.

**348** ■ ▬▬▬▬▬▬▬▬▬▬▬

where quiet title is sought involving property sold for taxes.[4]

¶ 11 At trial Krosmico argued that her family acquired title to the two lots by way of adverse possession since the nineteen-twenties. We recently observed that "[u]nder the Tax Code, one of the potential ultimate outcomes of the collection mechanisms for delinquent taxes is divestment of an owner's right, title and interest in the land, and a vesting in a resale tax deed purchaser an absolute and perfect title in fee simple to the real estate." *First American Bank v. Industrial Finance Auth.*, 1997 OK 155, ¶ 22, 951 P.2d 625, 632, *citing, Dunlap v. Mayer*, 1959 OK 125, 341 P.2d 258. In *Dunlap*, we said the following:

A valid resale tax deed divests former owners of all their right, title and interest in the land, and vests in the purchaser an absolute and perfect title in fee simple. The term "former owners", as used in this connection, includes not only the former owners of record but also includes all persons claiming an interest in the property by prescription, and *claims based upon prior occupancy are extinguished by the resale tax deed and cannot ripen into title by limitations by virtue of continued occupancy for less than fifteen years* after date of resale tax deed.

*Dunlap*, 1959 OK 125, at ¶ 13, 341 P.2d at 258, 260, *quoting from and adding emphasis to, Kasner v. Wilson*, 202 Okla. 497, 215 P.2d 833 (Okla.1950).

¶ 12 The allegations of Krosmico's Petition were that the tax resale proceedings were regular and valid.[5] It is true that in closing argument Krosmico's attorney argued that if Pettit did not have possession of the surface the tax deed was insufficient to empower him to grant an oil and gas lease. However, Pettit's authority to lease the minerals and any interests created thereby were not issues in this case. They were merely injected during the argument of counsel. No evidence at trial attacked either the tax sale or the resulting deed. The judgment did not adjudicate the validity of the tax deed or the nature of Pettit's mineral interest transactions. We thus begin our analysis with the starting point that the resale tax deed was valid, and that Pettit acquired title to the two lots in 1963. Thus, Krosmico must show the elements of adverse possession for the statutory period (15 years) prior to filing suit, and that period must have commenced after Pettit acquired his title in 1963.

¶ 13 Pettit claims that the evidence was insufficient to show adverse possession. He notes that Krosmico did not pay, nor attempt to pay, the property taxes. He states that the fence around the property was in disrepair, and that some of the fence was falling down. He points to testimony that Krosmico did not know that the fence enclosed Pettit's property when the fence was erected. He argues that the act of Krosmico in leasing the land to a third party in 1992 does not satisfy the statutory requirement for adverse possession. He states that he paid the ad valorem taxes on the property, and that he was a party in litigation involving his mineral

4. The time period necessary to establish title by adverse possession is based upon the statute of limitations relevant to the controversy. 60 O.S. 1991 § 333. *See* Mosburg, *Statutes of Limitation and Title Examination*, 13 Okla.L.Rev. 125, 127 (1960). Thus, the usual statutory period of fifteen years may not apply when a different statute is relevant to the controversy. *Id.* 13 Okla.L.Rev. at 128. *See, e.g., Mobbs v. City of Lehigh*, 1982 OK 149, ¶ 16, 655 P.2d 547, 551 (Legislature provided for a period shorter than fifteen years in favor of person in possession under a void tax deed); *Boone v. Claxton*, 1954 OK 33, 269 P.2d 980, 982, 984 (tax deed was void and party's right to relief arose from possession of fenced surface estate for statutory period of five years). In our case today Krosmico's claim of adverse possession was tried and argued in the District Court as being based upon a statutory requirement of fifteen years. The proper statutory period applicable to Krosmico's claim was not made an issue by the parties in either the trial or appellate courts. We neither accept or reject the correctness of the parties' views, and our application of the fifteen year period to Krosmico's claim is thus based merely upon how today's controversy was framed by the parties.

5. Her Petition states in part:

That the proceedings leading up to the issuance of said tax deed on all of the above described real property was legal, regular and valid in all respect, and that all the claims of all Defendants herein were extinguished by the issuance of the county tax deed. That county tax deed to Bill Pettit vested in him a new and inceptive title thereto, free and clear of any interest of any of the Defendants.

interest in the property. He further points to his participation in two wells. He also states that Krosmico did not know until 1989 that the property belonged to Pettit, and that she never informed Pettit of her interest in the property.

¶ 14 First, we have said that payment of taxes is not a controlling circumstance, but it is one means whereby a claim of ownership is asserted. *Carson v. Keith,* 1967 OK 206, ¶ 8, 433 P.2d 956, 958. *See Sudheimer v. Cheatham,* 1968 OK 99, ¶ 9, 443 P.2d 951, 953, (the payment of taxes was not conclusive upon the question of adverse possession, but facts which the jury could and should consider). The failure to pay property taxes may weaken a claim of ownership by adverse possession. *Anderson v. Francis,* 177 Okla. 47, 57 P.2d 619, 622 (Okla. 1936). However, title by adverse possession may be shown even though the possessor has not paid the property taxes. *Carson v. Keith, supra.* Thus, Krosmico's non-payment is insufficient to defeat her claim of ownership by adverse possession.

¶ 15 In order to establish adverse possession the claimant must show that possession was hostile, under claim of right or color of title, actual, open, notorious, exclusive, and continuous, for the statutory time. *Shanks v. Collins,* 1989 OK 115, 782 P.2d 1352. Some of the facts in our case today are similar to those in *Fadem v. Kimball,* 1979 OK CIV APP 40, 612 P.2d 287, (approved for publication by Supreme Court). There the Fadems owned land that the Kimballs claimed by adverse possession. The Fadems had never used the land or leased the surface, but they had executed oil and gas leases covering the property and had paid the property taxes. The Kimballs erected a fence enclosing the property and raised cattle on the property. The trial court determined that the Kimballs had showed adverse possession. This judgment was affirmed on appeal.

¶ 16 On appeal the Fadems asserted that the possession of the property by the Kimballs was not hostile. The Fadems asserted that the Kimballs had never denied or repudiated the ownership by the Fadems, and that such was a requirement for adverse

possession. The appellate court stated in *Fadem* that:

> We are unaware of any Oklahoma case requiring an affirmatively communicated denial or repudiation of the right of the true owner when the possession did not begin as rightful or permissive. Finally, if there were such a requirement, we would find it satisfied by the Kimballs' acts of dominion over the property in fencing and using the property without permission or privilege to do so.

1979 OK CIV APP 40, ¶ 8, 612 P.2d at 290.

The exclusive, open, and hostile acts of dominion in *Fadem* were fencing the land and raising cattle on it. The exclusive, open, and hostile acts of dominion in this case are the acts of the Zellars in fencing the property, cultivating the property by the removal of brush and the application of fertilizer, and raising cattle on it.

¶ 17 The Fadems argued that the possession by the Kimballs was not under a claim of right because the Fadems were never put on notice of an adverse claim by the Kimballs. In our case today Pettit makes an argument based upon an estoppel theory, that Krosmico was silent and failed to inform Pettit of her interest in the property. In *Fadem* the court quoted from *Winslow v. Watts,* 1968 OK 156, 446 P.2d 598, (syllabus by the court), and stated that:

> Acts of such character and so definite and observable that they would reasonably indicate to an owner of ordinary prudence, should he visit the premises, that ownership adverse to him is being asserted, or sufficient to put him on inquiry, constitute constructive notice of adverse possession.

*Fadem,* 1968 OK 156, ¶ 10, 612 P.2d at 290.

Enclosing the two lots within the Zellar property fences, and using that property for the purpose of raising cattle was sufficient to indicate to Pettit that ownership adverse to him was being asserted.

¶ 18 Krosmico's lack of awareness of Pettit's record title until 1989 does not detract from her claim that she and her family were asserting ownership prior to that date. Open, visible, notorious, continuous, and hos-

tile occupancy may be adverse although the occupants are unaware of the true location of a boundary line. *Macias v. Guymon Industrial Foundation,* 1979 OK 70, n. 2, 595 P.2d 430, 432–433.

¶ 19 On certiorari Pettit relies upon five opinions. Two of these opinions are not relevant to our controversy today.[6] The third, *Cloer Land Co. v. Wright,* 1993 OK CIV APP 56, 858 P.2d 110, was not released for publication by this Court, and is cited merely for the rule that fifteen years is required to obtain title by adverse possession. We have recognized the statutory requirement that an adverse possessor must possess property for fifteen years to obtain title based upon that possession.[7] The fourth is *Kasner v. Wilson,* 202 Okla. 497, 215 P.2d 833 (Okla.1950), which is cited previously here, and states the rule that a resale tax deed divests former owners of their interests in the property, including owners claiming interests by prescription or occupancy. The fifth opinion cited is *Collins v. Smith,* 1962 OK 128, 372 P.2d 878. There the Collins' land was sold for taxes and Smith bought the property. Collins resided in Colorado and the property was leased to others, with some of the leases identifying the lessors as both Collins and Smith. We said that Collins failed to prove that his possession was exclusive. *Id.* 1962 OK 128, at ¶¶ 18–19, 372 P.2d at 881.

■ ¶ 20 Pettit claims that the evidence showed that both the Zellars and Pettit possessed the property—the Zellars the surface and Pettit the minerals. In adverse possession jurisprudence this Court has considered whether the mineral estate has been severed from the surface estate, and whether actual possession of the minerals has occurred.

*Hassell v. Texaco, Inc.,* 1962 OK 136, ¶ 9, 372 P.2d 233, 235, (where there is a severance of the mineral estate from the surface estate the continued occupancy of the surface estate by another will not act to adversely possess the minerals); *Dearing v. State ex rel. Commissioners of Land Office,* 1991 OK 6, n. 20, 808 P.2d 661, 668, (adverse possession of severed minerals can occur only by actual possession of the minerals). Pettit did not produce any evidence in support of an argument that the minerals were severed from the surface estate.

■ ¶ 21 The only evidence presented in the trial court as to the nature of Pettit's mineral interest was that he had participated in a well located in the same governmental section as the property, and again participated when the well was drilled to a deeper depth. The factual nature of this participation was not explained at trial, nor was any authority presented showing such participation of itself amounted to a severance of the minerals. The dates of the participation are not part of the record. Clearly, the execution of an oil and gas lease will not defeat a claim of adverse possession by a possessor of the surface using the property for raising cattle. *Fadem v. Kimball, supra.* We thus must conclude that the testimony of Pettit's participation was insufficient to defeat Krosmico's title by adverse possession.

■ ¶ 22 The trial court found that adverse possession of non-severed minerals follows or goes with the adverse possession of the surface. It found that Krosmico's adverse possession included all minerals not severed prior to the beginning of the period of adverse possession. It did not state when the period of adverse possession began, but

---

**6.** *Jenkins v. Frederick,* 208 Okla. 583, 257 P.2d 1058 (Okla.1952), (involved application of a statute of limitations and ownership of minerals); *Woods v. Phillips Petroleum Co.,* 207 Okla. 490, 251 P.2d 505 (Okla.1952), (involved application of a statute of limitations).

**7.** *Mobbs v. City of Lehigh,* 1982 OK 149, n. 21, 655 P.2d 547; *Fadem v. Kimball,* 1979 OKCIVAPP 40, ¶ 10, 612 P.2d 287, 291: 12 O.S.1991 § 93(4); 60 O.S.1991 § 333.

60 O.S.1991 § 333 states:

Occupancy for the period prescribed by civil procedure, or any law of this state as sufficient

to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all. 12 O.S.1991 § 93 provides in part that:

Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed after the cause of action shall have accrued, and at no other time thereafter:

(4) An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years.

did state that the adverse possession occurred for more than fifteen years prior to the filing of the petition in June of 1995. On appeal Pettit requests, without authority, that we rule that participation in an oil and gas well severs the mineral estate from the surface estate. Pettit did not request this relief from the trial court. This Court does not make a first-instance determination of a disputed question of law. *Bivins v. State ex rel. Okla. Mem. Hosp.,* 1996 OK 5, ¶ 19, 917 P.2d 456, 464; *Reddell v. Johnson,* 1997 OK 86, ¶ 6, 942 P.2d 200, 202.

¶ 23 The pleadings invoked the equitable cognizance of the trial court to quiet title, and in such a case this Court will not reverse the judgment unless it is against the clear weight of the evidence. *Shanks v. Collins,* 1989 OK 115, ¶ 16, 782 P.2d 1352, 1354; *Carson v. Keith,* 1967 OK 206, ¶ 11, 433 P.2d 956, 958. The trial court did not determine the specific date the Zellars/Krosmico completed their claim to the property by adverse possession. However, it did determine that the Zellars/Krosmico adversely possessed the property for more than fifteen years prior to the suit being filed. The arguments on certiorari do not show that this conclusion is against the clear weight of the evidence. Pettit obtained title to the lots in 1963. Evidence was uncontroverted that after 1963 and for more than a fifteen year period prior to filing suit the Zellars/Krosmico adversely possessed the property. We thus affirm the judgment of the trial court based upon the strength of Zellars/Krosmico's title by adverse possession occurring after Pettit obtained the property in 1963. The opinion of the Court of Civil Appeals herein is vacated, and the judgment of the District Court of Pittsburg County is affirmed.

¶ 24 KAUGER, C.J., and HODGES, LAVENDER, SIMMS and WATT, JJ., concur.

¶ 25 OPALA, J., concurs in judgment.

¶ 26 HARGRAVE and ALMA WILSON, JJ., concur in part, dissent in part.

Diagram showing the location of the real property in Okla.Sup.Ct. No. 88,152.

Zellar home place.

Krosmico/Zellar Property.

Pettit's property claimed by Krosmico (Block 86, Lots 1 and 2).

G    Exterior Gate.

XXXX    Exterior Fence.