[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for decision following a non-jury trial on a complaint by Monarch Builders, Inc. ("Plaintiff"), against Roman Natynak and Marsle Natynak[1] ("Defendants"). Plaintiff seeks to foreclose Defendants' rights of redemption pursuant to G.L. 1956 § 44-9-25. Plaintiff also seeks to quiet title under the theory of adverse possession as prescribed in G.L. 1956 § 34-7-1.[2] Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 FACTS AND TRAVEL
On September 29, 1939, Defendants Roman[3] and Marsle Natynak, as joint tenants, purchased property located at 4 Harding Avenue in East Providence, Rhode Island (the "Property"). Defendants tendered one hundred five dollars ($105.00) for the Property. On or about January 28, 1960, the City of East Providence acquired tax title to the Property as a result of Defendants' failure to pay property taxes thereon. The City of East Providence sent a notice to Defendants' residence at 373 Providence Street in Woonsocket, Rhode Island On November 23, 1973, the City of East Providence transferred the tax title to Margaret Emerson and Allen Emerson (the "Emersons") by executing an Instrument of Assignment of Tax Title. Again, the City of East Providence sent a written notification of the transfer to Defendants' residence.
The Emersons held tax title to the Property until April 21, 1999. During this period of possession, the Property was used sporadically to store boats and trailers. Specifically, Allen and Margaret Emerson used the Property for this purpose from 1966 until 1974. Thereafter, Margaret Emerson's second husband stored his boat and trailer on the Property from 1976 until 1996. In 1996, the Emersons permitted the tenant from 3 Harding Avenue to store a boat and trailer until the sale of the Property in 1999. No attempt to foreclose Defendants' right of redemption was ever made; however, no attempt to assert an extant right of redemption was made by Defendants.
On April 21, 1999, Monarch Builders, Inc. ("Plaintiff") purchased the tax title interest from the Emersons for a sum of five thousand dollars ($5,000.00). A Quitclaim Deed was executed to consummate the sale. Immediately thereafter, Plaintiff paid property taxes and made substantial improvements to the property, as it was in total disrepair. Plaintiff filed a Petition to foreclose the outstanding tax lien on November 5, 1999, thirty-nine years after Defendants had lost title to the Property. Notice of the Petition was published in The ProvidenceJournal on November 12, 19, and 26, 1999. On January 5, 2000, Plaintiff filed a Complaint to Quiet Title. The Petition to Foreclose and the Complaint to Quiet Title were consolidated on March 31, 2000. Defendant Marsle Natynak filed an Answer to the Petition and Complaint to Quiet Title. Defendant Marsle Natynak filed a Counterclaim, seeking an injunction to remove Plaintiff from the Property and seeking title free and clear of any and all encumbrances. Marsle Natynak died on March 17, 2003; her heirs, Darlene R. Machado and Marko M. Natyniak, are pressing her claims.
 FORECLOSURE OF RIGHT OF REDEMPTION
A tax-sale purchaser may petition the court to foreclose the titleholder's interest in property purchased at tax sale. The foreclosure process is described in G.L. 1956 § 44-9-25 as follows:
 "Petition for foreclosure of redemption. — After one (1) year from a sale of land for taxes, except as provided in §§ 44-9-19 to 44-9-22, inclusive, whoever then holds the title thereby acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder. Such petition shall set forth a description of the land to which it applies, with its assessed valuation, the petitioner's source of title, giving a reference to the place, book and page of record, and such other facts as may be necessary for the information of the court. Two (2) or more parcels of land may be included in any petition brought by a town, as purchaser of such title or titles, if such parcels are in the same record ownership at the time of bringing such petition."
However, until the tax titleholder petitions the court to foreclose these rights, the titleholder may seek to redeem property sold at a tax sale "at any time prior to the filing of the petition for foreclosure" or at any time during the pendency of the petition under § 44-9-29. See G.L. 1956 § 44-9-21
(emphasis added). Section 44-9-21 provides:
 "Redemption from purchaser other than town. — Any person may redeem by paying or tendering to a purchaser, other than the town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the town, at any time prior to the filing of the petition for foreclosure, in the case of a purchaser the original sum and intervening taxes and costs paid by him or her, plus a penalty as provided in § 44-9-19, or in the case of an assignee of a tax title from a town, the amount stated in the instrument of assignment, plus the above-mentioned penalty. He or she may also redeem the land by paying or tendering to the treasurer the sum which he or she would be required to pay to the purchaser or to the assignee of a tax title, in which case the town treasurer shall be constituted the agent of the purchaser or assignee."
Section 44-9-29 provides:
 "Any person claiming an interest, on or before the return day or within that further time as may on motion be allowed by the court, shall, if he or she desires to redeem, file an answer setting forth his or her right in the land, and an offer to redeem upon the terms as may be fixed by the court. The court shall hear the parties, and may in its discretion make a finding allowing the party to redeem, within a time fixed by the court, upon payment to the petitioner of an amount sufficient to cover the original sum, costs, penalties, and all subsequent taxes, costs, and interest to which the petitioner may be entitled, together with the costs of the proceeding and counsel fee as the court deems reasonable. The court may impose other terms as justice and the circumstances warrant."
The clear language of the statute provides no limitation on the right to redeem the property. See G.L. 1956 § 44-9-21; G.L. 1956 § 44-9-29; see also Lydwin R. Young Associates v.Byrne, et al., 1989 R.I. Super. LEXIS 88 (finding that "defendants are guilty of laches . . . [but] as a matter of law, [the court] [could] not apply the doctrine of laches" to bar a party's right to redemption). Accordingly, the question before this Court is whether a titleholder's right of redemption, in this case Defendants', may be extinguished through adverse possession by the tax titleholder, in this case Plaintiff.
This question has been answered in the affirmative by our Supreme Court. Sleboda v. Heirs at Law of Harris, 508 A.2d 652, 655 (R.I. 1986). In Sleboda, the plaintiffs purchased the tax title of a tract of heavily wooded land in 1950. Id. at 653. The land remained overgrown; the extent of the plaintiffs' use of the property was to occasionally cut and gather wood therefrom.Id. Twenty five years after the plaintiff's purchase, a certificate of redemption and payment of taxes owed were issued to the town's treasurer. Id. at 654. As a result, the plaintiff filed an action to quiet title, relying on adverse possession.Id.
The Sleboda court found that "the right of redemption may be extinguished by adverse possession for the statutory period and subject to proof of the statutory conditions. Id. at 657. The court reasoned that statutes permitting adverse possession "were not designed solely for the protection of trespassers and tortious disseisors (although such persons may have benefited from the statute of limitations) but were designed to quiet the title of individuals who had acquired title by deed but whose deeds were in some way defective." Id. Furthermore, the Court reasoned that the provisions which sanction quiet title and adverse possession "create a statutory scheme for the cure and supplying of defects of title to those who have had for the statutory term `uninterrupted, quiet, peaceful and actual seisin and possession of any lands . . . [making] no distinctions concerning the type of deed or claim of right under which the parties in possession assert their ownership." Id. at 656. Accordingly, Plaintiff may foreclose Defendants' rights of redemption upon the demonstration of an adverse possession claim.
 ADVERSE POSSESSION
The doctrine of adverse possession and the elements necessary to establish this claim are set forth in Rhode Island General Laws 1956 § 34-7-1 which reads:
 "Conclusive title by peaceful possession under claim of title
 Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."
This definition has been refined to require the individual relying on the doctrine of adverse possession to establish seven elements by "strict proof, that is, proof by clear and convincing evidence." Tavares v. Beck, 814 A.2d 346, 350 (R.I. 2003). The claimant must show that possession of the property was "actual, open, notorious, hostile, under claim of right, continuous, and exclusive" for the duration of the statutory period, in this case 10 years. Id. "[N]o particular act to establish an intention to claim ownership is required" to establish adverse possession.Gammons v. Caswell, 447 A.2d 361, 367 (R.I. 1982). Rather, "[i]t is sufficient if the claimant goes upon the land openly and uses it adversely to the true owner." Id. Once the possessor has followed this course of action, "[t]he owner then becomes chargeable with knowledge of what is done openly on the land"Id.
Actual and continuous possession is established by showing that the claimant exercised "acts of dominion over that property; . . . [t]he possession and concomitant exercise of dominion must also have a continuity that is sufficient to acquaint an owner of the land claimed that the claim of title contrary to his own is being asserted by the claimant." Sherman v. Goloskie, 95 R.I. 457, 465, 188 A.2d 79, 83 (R.I. 1963). In Walsh v. Cappuccio,602 A.2d 927, 931 (R.I. 1992), the Supreme Court stated:
 "`with respect to the elements of actual and continuous possession constant use is not required when the property is of such character as to preclude actual occupation.' Lee v. Raymond, 456 A.2d at 1183; Russo v. Stearns Farms Realty, Inc., 117 R.I. 387, 392, 367 A.2d 714, 717 (1977). However, we have long tempered that philosophy with the requisite that `continuity of the possession must be sufficient to signal the true owner of the land that a claim of title contrary to his own is being asserted.'" Lee v. Raymond, 456 A.2d at 1183 (citing Sherman v. Goloskie, 95 R.I. 457, 465, 188 A.2d 79, 83 (1963)).
Furthermore, a change in possession does not defeat the continuity requirement. Instead, tacking — "the joining of consecutive periods of possession by different persons to treat the periods as one continuous period" Black's Law Dictionary
1465 (7th ed. 1999) — is permitted under G.L. 1956 § 34-7-1
and has been recognized by the Supreme Court. See Taffinder v.Thomas, 119 R.I. 545, 549, 381 A.2d 519, 521 (R.I. 1977);Tavares, 814 A.2d at 352 (stating "bootstrapping oneself into the ownership of property by actions and uses of the land that are adverse to the owner of record is exactly what adverse possession entails").
"Regarding the elements of `claim of right' and `exclusivity,' [the Rhode Island Supreme Court] discussed in Gammons that in order for a defendant to successfully defend against an adverse possession claim of disputed land, `there would have to be evidence indicating that the defendants or others had made improvements to the land or, at the very least, had used the land in a significant fashion. . . .'" Anthony v. Searle,681 A.2d 892, 898 (R.I. 1996) (citing, Gammons, 447 A.2d at 368)).
Finally, where the actions of the adverse possessor were sufficiently visible and clear to put the world or better yet, a reasonable person, on notice of his or her claim to the land, the claimant has successfully established that the possession was open and notorious. Tavares, 814 A.2d at 352. "To be sure, `our adverse-possession statute was never intended to allow the possessor of property to mask his intent and then acquire the property by concealing the true situation from the record owner.'" Id. However, "[a]ctual occupation or intensified use" of the land is not necessary, rather the land only need be used in a similar manner to comparable land "considering the character and locality, . . . and the uses and purposes for which it is naturally adapted." Id.
Although this Court found Plaintiff's witnesses, including the son of the previous tax titleholder, Roy Emerson, and the owner of Monarch Builders, Inc., Mr. Campos ("Campos"), to be extremely credible, the testimony did not establish that the Emersons' use of the property was sufficient to constitute adverse possession. The extent of the use was limited to the intermittent storage of various boats and trailers. Roy Emerson testified that his parents parked a boat and trailer there from 1966 until 1974. Two years later, his mother's second husband began parking his boat and trailer on the flat portion of the property until 1996. Thereafter, the property was, with Margaret Emerson's permission, used by a neighbor for the same purpose until the sale to Plaintiff in 1999. However, this Court finds that this type of use is not "sufficient to signal the true owner of the land that a claim of title contrary to his own is being asserted." SeeKendall v. Selvaggio, 413 Mass. 619, 624, 602 N.E.2d 206, 210 (Mass. 1992) (stating, "[a]cts of possession which are `few, intermittent and equivocal' do not constitute adverse possession"); see also Brouse v. Hauck,
34 Pa. D. C. 3d 563, 567, 1982 Pa. D. C. LEXIS 175 (1982) (stating, "indeed the very concept of storage is that it is temporary in duration"); see also Coons v. Lawler, 237 Ark. 350, 352, 372 S.W.2d 826, 827-828 (Ark. 1963) (stating, the acts of the plaintiff in constructing a septic tank, filling in a low place on the disputed strip, parking trailers on the property at irregular intervals, planting a row of trees on the property and building a boat dock, fell short of that adverse possession required for a trespasser's claim to ripen into title).
In addition, the evidence regarding the maintenance of the Property does not establish that Plaintiff's use of the property was actual, open, notorious, and/or continuous use consistent with the standards governing adverse possession. Although Roy Emerson testified that he and his father before him maintained the Property by cutting the grass, Campos testified that the Property, when purchased, was in total disrepair. As a result, Plaintiff was forced to engage in serious renovations. "[C]onsidering the character and locality, . . . and the uses and purposes for which it is naturally adapted," this is not sufficient use to constitute adverse possession. Tavares, 814 A.2d at 352. Comparable properties would be maintained more vigorously than the Property had been by the Emersons. Examples of appropriate use and/or maintenance include: cultivating land, planting trees, posting no-trespass signs, constructing fences, cutting wood, and making other improvements. See Anthony, 681 A.2d at 898; see also, Tavares v. Beck, 814 A.2d at 352. Using the Property simply for storage and occasionally mowing the lawn are not the uses and purposes for which it is naturally adapted.
Finally, although the failure to pay taxes by the adverse possessor — in this instance the Emersons during their tax title ownership — is not dispositive, it is evidence which weakens a claim of adverse possession. See Sleboda, 508 A.2d at 658 (finding, the payment of property taxes by the adverse possession can serve as constructive notice of the hostile claim); seealso Rutar Farms Livestock v. Fuss, 651 P.2d 1129, 1135, 1982 Wyo. LEXIS 388, 18 (Wyo. 1982) (stating, "[f]ailure to pay taxes is a fact to be considered along with others which tend to weaken a claim of ownership by adverse possession"). On this issue, the Supreme Court of Oklahoma said:
 "First, we have said that payment of taxes is not a controlling circumstance, but it is one means whereby a claim of ownership is asserted. See Sudheimer v. Cheatham, 1968 OK 99, P9, 443 P.2d 951, 953, (the payment of taxes was not conclusive upon the question of adverse possession, but facts which the jury could and should consider). The failure to pay property taxes may weaken a claim of ownership by adverse possession. However, title by adverse possession may be shown even though the possessor has not paid the property taxes. Thus, Krosmico's non-payment is insufficient to defeat her claim of ownership by adverse possession." Krosmico v. Pettit, 1998 OK 90, 14, 968 P.2d 345, 349 (Okla. 1998) (citations omitted). Campos testified that he paid all of the taxes owed on the property when purchased. The Emersons' failure to pay taxes on the Property for over forty years is evidence weakening a claim of adverse possession for those years.
 CONCLUSION
In the instant case, the evidence shows that Plaintiff's possession did not establish the elements of adverse possession prescribed in G.L. 1956 § 34-7-1 by clear and convincing evidence. Plaintiff's use, despite the doctrine of tacking, did not constitute actual, continuous, open or notorious use for the statutory period. For the foregoing reasons, Plaintiff has failed to establish each element of adverse possession by clear and convincing evidence. Accordingly, Plaintiff's Petitions to Foreclose Defendants' rights of redemption and to Quiet Title of the Property, located at 4 Harding Avenue in East Providence, Rhode Island, is denied.
Counsel shall prepare the appropriate Order for entry of judgment.
[1] Marsle Natynak has used various names including, Marcelle Natyniak and Marie Natyniak.
[2] A Petition to Foreclose was filed in case number 99-5681. A Complaint to quiet title was filed in case number 00-0036. These cases were consolidated by Court Order dated, March 31, 2000.
[3] Roman Natynak died intestate on June 3, 1968.