2012 OK 79

**Chad H. AKIN, Plaintiff/Appellant,**

**v.**

**Don S. CASTLEBERRY, Sam D. Castleberry, and Terry G. Castleberry, all if living, and if dead their unknown heirs, executors, administrators, devisees, trustees and assigns, Defendants/Appellees,**

**and**

**The County Commissioners of Tillman County, State of Oklahoma, Defendants.**

**No. 108,342.**

Supreme Court of Oklahoma.

Sept. 18, 2012.

Babette Patton, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Brandon Wilson, Oklahoma City, Oklahoma, for Defendants/Appellees.

KAUGER, J.:

¶ 1 The only issue presented on appeal is whether the trial court erred in determining that title to the property was not held by adverse possession. We affirm the trial court's decision because title by adverse possession was not proven under the facts presented.

## FACTS

¶ 2 In October of 1956, Robert and Florence McKinney (collectively McKinneys) purchased the disputed real property from a widower. The deed described the property as follows:

The Surface rights only in and to:

The South Half (S ½) of the Southeast Quarter (SE ¼) of Section Eight (8), and Lots One (1), Two (2) and Three (3) of Section Seventeen (17), all in Township Four (4) South, Range Seventeen (17) West, I.M., Tillman County, Oklahoma, containing 162.37 acres more or less.

¶ 3 On September 26, 1975, the McKinneys retired from farming and sold their land at public auction. According to the auction flyer, the sale involved two parcels of land. The first sale was identified as "Sale No. 1" and it concerned "[t]he West 90 acres of the NE ¼ Section of 17W." The second parcel was identified as "Sale No. 2" and it was described as "The South ½ of the SE ¼ Section, 8–4S17W, and Lot 3 of Section 17–42–17W. Containing 160 acres, more or less in all grass." **Lots 1 and 2 which were part of the original 1956 deed were not mentioned in the flyer and apparently not included in the sale.**

¶ 4 Lots 1 and 2 consist of grass, trees, and shrub land along the Red River. Lot 1 is

approximately 38.02 acres and Lot 2 is approximately 25.40 acres. The lots, unsuitable for cultivation, are primarily used for running cattle, hunting, or access to the river for fishing or other recreational activities. The lots are land-locked with no road to access them. Two sides of the lots are abutted by land owned by the Akin family, another side is abutted by land owned by a person named Wright and the fourth side borders the Red River.

¶ 5 Akin's father purchased the second parcel identified in the real estate auction flyer as "Sale No. 2" at the auction and entered into a real estate mortgage for the property with the McKinney's for $13,125.00.[1] Three days later, the father deeded the property to Akin who was 12 years old at the time. On February 21, 1986, Florence McKinney, then a widow, deeded Lots 1 and 2, as described in the original 1956 deed, to the Castleberrys.[2]

¶ 6 On January 5, 2007, Akin filed a petition to quiet title to real estate in Tillman County District Court, seeking title to Lots 1 and 2 as described in the Castleberry's deed. He alleged that for more than 30 years prior to the institution of the action, he and his predecessors had been in open, notorious, adverse, exclusive and continuous possession of the property. The Castleberrys denied the allegations and counterclaimed, alleging that Akin had interfered with their use of the property and caused a cloud upon their title to the property.

¶ 7 A trial was held before the District Judge on June 9, 2008. On June 27, 2008, the trial judge filed a journal entry of judgment concluding that title to the disputed Lots 1 and 2 was vested exclusively in Akin. The Castleberrys appealed and in case no. 106,151, on September 11, 2009, in an unpublished opinion, the Court of Civil Appeals reversed and remanded the matter to the trial court. It held that the trial court erred when it neglected to consider the testimony of the Castleberry's lawyer's corroborative evidence concerning permissive use of the property.[3]

¶ 8 On February 12, 2010, the trial court heard the testimony of the Castleberry's lawyer. On February 22, 2010, the trial court, after reconsidering all the evidence and the additional testimony, determined that Akin failed to prove his claim of adverse possession. On February 26, 2010, Akin filed a motion for new trial/motion to vacate judgment which the trial court denied on April 9, 2010 in an order filed April 21, 2010. Akin appealed on May 21, 2010, and on September 23, 2011, in an unpublished opinion, the Court of Civil appeals reversed the trial court.[4] We granted certiorari on December 12, 2011.

## ¶ 9 TITLE BY ADVERSE POSSESSION WAS NOT PROVEN UNDER THE FACTS PRESENTED.

¶ 10 Recognizing that the time limit has expired to correct any alleged mistake in

1. The mortgage and the deed were both dated September 26, 1975, and the property description on both provides:
   The South Half of the Southeast Quarter of Section Eight (8), Township Four (4) South, Range 17 WIM; and Lot Three (3) of Section Seventeen (17), Township Four (4) South, Range 17 WIM....
   On September 22, 1978, the mortgage was released.

2. The February 21, 1986 deed describes the property as follows:
   Lots 1 and 2 of Section 17, Township 4 South, Range 17 West of the Indian Meridian ...

3. Mandate in cause no. 106,151 issued on October 8, 2009.

4. We note that the transcripts and exhibits for the bench trial of June 9, 2008, were designated by the defendants/appellees on June 10, 2010. The Court of Civil Appeals also noted this, because on August 17, 2011, it issued an order requesting that the transcripts and exhibit be provided by the Tillman County Court Clerk. The clerk provided transcripts, but the exhibits remained missing. The Court of Civil Appeals decided the cause without the exhibits. We granted certiorari on December 12, 2011, and issued an order to the clerk and to the parties to show cause why the exhibits were not included in the appeal as designated. The Tillman County Clerk responded on May 29, 2012, that the exhibits could not be located. The parties also responded, indicating that they had copies of the exhibits which could be provided to the Court. On June 7, 2012, we issued an order directing the parties to jointly provide copies of the admitted exhibits and to stipulate as to their authenticity. On June 18, 2012, the parties filed the exhibits and so stipulated as to their authenticity, and the cause was finally ready for our review.

the 1975 deed that his father may have received after the public auction,[5] Akin seeks to quiet title to the property by way of a claim of adverse possession. The Castleberrys deny Akin's claim and argue that the unbroken chain of record title shows ownership in the property belongs to them. They also insist that any adverse claim that Akin might assert is defeated by the fact that they have been in possession of the property since 1986, and have paid taxes on the property since then as well.

¶ 11 In adverse possession cases, the appellate court weighs evidence presented but will not reverse the trial court's judgement unless it is against the clear weight of evidence.[6] To establish adverse possession, the claimant must show that possession was hostile, under a claim of right or color of title, actual, open, notorious, exclusive,[7] and continuous for the statutory period of fifteen years.[8]

¶ 12 Furthermore, a claim of ownership must notify persons seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles or claimants.[9] Acquisition by prescription is disfavored, and not to be made out by inference.[10] The party claiming title adversely has the burden of proving every element by clear and positive proof.[11] In questionable cases, presumptions favor the record title holder.[12]

¶ 13 What constitutes adverse possession depends on the circumstances of the particular case, as measured by the judgment of reasonable people. The determination in any given case must largely depend on the situation of the parties, size and extent of land, and purpose for which it is adapted.[13] Payment of taxes is not controlling circumstances but is one means whereby claim of ownership is asserted.[14]

5. The parties agree that Akin is time barred from seeking reformation of the 1975 deed due to any alleged mistake in omitting Lots 1 and 2 from the deed. Title 12 O.S.2011 § 95 provides in pertinent part:

A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
1. Within five (5) years: An action upon any contract, agreement, or promise in writing;
. . .
12. An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued. . . .

6. *Francis v. Rogers*, 2001 OK 111, ¶ 12, 40 P.3d 481; *Krosmico v. Pettit*, 1998 OK 90, ¶ 23, 968 P.2d 345; *Shanks v. Collins*, 1989 OK 115, ¶ 16, 782 P.2d 1352; *Carson v. Keith*, 1967 OK 206, ¶ 11, 433 P.2d 956.

7. *Francis v. Rogers*, see note 6, supra; *Krosmico v. Pettit*, see note 6, supra at ¶ 15; *Shanks v. Collins*, see note 6, supra; *Norman v. Smedley*, 1961 OK 143, ¶ 22, 363 P.2d 839.

8. Title 12 O.S.2011 § 93 provides in pertinent part:

Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no other time thereafter: . . .

(4) An action for the recovery of real property not hereinbefore provided for, within fifteen (15) years.
Title 60 O.S.2011 § 333 provides:
Occupancy for the period prescribed by civil procedure, or any law of this state as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all.

9. *Francis v. Rogers*, see note 6, supra at ¶ 13; *Willis v. Holley*, 1996 OK 107, ¶ 6, 925 P.2d 539; *Sears v. State Dept. of Wildlife Conservation*, 1976 OK 56, ¶ 13, 549 P.2d 1211; *Sudheimer v. Cheatham*, 1968 OK 99, ¶ 8, 443 P.2d 951.

10. *Willis v. Holley*, see note 9, supra at ¶ 5; *Sudheimer v. Cheatham*, see note 9, supra at ¶ 7; *Hassell v. Texaco, Inc.*, 1962 OK 136, ¶ 13, 372 P.2d 233.

11. *Francis v. Rogers*, see note 6, supra; *Willis v. Holley*, see note 9, supra; *Norman v. Smedley*, see note 7, supra; *Sudheimer v. Cheatham*, see note 7, supra.

12. *Willis v. Holley*, see note 9, supra; *Shanks v. Collins*, see note 6, supra; *Tindle v. Linville*, 1973 OK 64, ¶ 8, 512 P.2d 176.

13. *Sears v. State Dept. of Wildlife Conservation*, see note 9, supra at ¶ 14; *Kouri v. Burnett*, 1966 OK 61, ¶ 19, 415 P.2d 963.

14. *Sears v. State Dept. of Wildlife Conservation*, see note 9, supra at ¶ 15; *Kouri v. Burnett*, see note 13, supra at ¶ 28; *Cox v. Sarkeys*, 1956 OK 294, ¶ 7, 304 P.2d 979; *Anderson v. Francis*, 1936 OK 312, ¶ 17, 57 P.2d 619.

¶ 14 At trial, the evidence of record title to the property was clear and uncontroverted. Direct and circumstantial evidence showed that the McKinneys were the record owners of lots 1 and 2 from 1956 until 1986, when, then widowed, Florence McKinney deeded the lots to the Castleberrys. Once the Castleberrys obtained the lots, they paid all of the ad valorem property taxes since 1986. While Akin testified that he and his father thought that his father had purchased lots 1 and 2 at auction, the deeds never reflected such and neither Akin nor his father ever attempted to correct their deeds to reflect this belief. Obviously, McKinney did not share this belief or she would not have deeded the property in 1986. Nevertheless, an abstract that Akin had prepared on October 17, 1975, includes lots 1 and 2 in a map of the property purchased and in the caption of the title opinion.

¶ 15 The evidence also reflects that both parties exercised possession and/or control of the property over the years. For example, on January 15, 1979, Akin granted a right of way/easement for all three lots to Diamond Shamrock Corporation for an oil and gas pipeline. The Akin family also built fences around the property and kept a gate with a lock on it which would inhibit access to the property in question when locked. Nevertheless, the Castleberrys claimed to have had, at some point in time, a key to unlock the gate, so that they could access their property. None of the Castleberrys lived in Tillman County and they only occasionally used the property for recreational purposes. Akin posted "NO TRESPASSING" signs on various points along the property borders.

¶ 16 In 2005, the Castleberrys inquired into the possibility of the county clearing a road to the property. Both parties presented evidence of use of the property either for cattle grazing, hunting or access to the river. In 1987, the Castleberrys asked an attorney to draft an agreement to present to Akin which would allow them to permissively run cattle on the disputed property in exchange for access to the property. Apparently, this "agreement" was never signed by Akin.[15]

¶ 17 In addition to the uncontroverted evidence that the Castleberrys paid the taxes on the property since 1986, the uncontroverted evidence also shows that both Akin and the Castleberrys were in possession of and used the property at the same time since 1986.[16] These facts are fatal to Akin's claim of adverse possession because in cases of mixed or dual possession (shared use), possession can never ripen into exclusive dominion over the land and the possessor who has better title is deemed to be in the possession.[17] Consequently, we hold that the trial court did not err in its determination that title by adverse possession was not vested in Akin.

## CONCLUSION

¶ 18 In adverse possession cases, the appellate court weighs evidence presented but will not reverse the trial court's judgement unless it is against the clear weight of evidence.[18] To establish adverse possession, the claimant must show that possession was hostile, under a claim of right or color of title,

---

**15.** Akin argues that a footnote in *Macias v. Guymon Ind. Foundation*, 1979 OK 70, ¶ 7, fn. 6, 595 P.2d 430 which states that merely giving notice to an occupant that true title is in someone else is ineffective unless the landowner, or someone in his behalf, acts overtly to oust the adverse claimant. This statement of the law, while it may be accurate, is not controlling nor dispositive here for several reasons: 1) this statement of the law only deals with the issue of possession and not any of the other elements Akin must prove to establish title by prescription; 2) the facts of *Macias* are distinguishable in that it was the unsolicited consent which was the only factor involved in that case; and 3) *Macias* does not address non-exclusive use of property which is at issue here.

**16.** What constitutes "possession" of land is a mixed question of law and fact. Personal occupancy is not a necessary element of possession. *Cox v. Sarkeys*, 1956 OK 294, ¶¶ 7–9, 304 P.2d 979.

**17.** *Sears v. State Dept. of Wildlife Conservation*, see note 9, supra ¶ 16; *Howard v. Stanolind Oil and Gas Co.*, 1946 OK 56, ¶¶ 38–39, 169 P.2d 737; *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1261 (10th Cir.2007).

**18.** *Francis v. Rogers*, see note 6, supra; *Krosmico v. Pettit*, see note 6, supra; *Shanks v. Collins*, see note 6, supra; *Carson v. Keith*, see note 6, supra.

actual, open, notorious, exclusive,[19] and continuous for the statutory period of fifteen years.[20] The party claiming title adversely has the burden of proving every element by clear and positive proof.[21] In questionable cases, presumptions favor the record title holder.[22] The evidence, when taken as a whole, did not clearly and positively show that Akin had open, notorious, hostile and exclusive possession of the property for an uninterrupted and continuous period of fifteen years. Accordingly, the trial court is affirmed.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, GURICH, JJ., concur.

COMBS, J., recused.

**19.** *Francis v. Rogers*, see note 6, supra; *Krosmico v. Pettit*, see note 6, supra at ¶ 15; *Shanks v. Collins*, see note 6, supra; *Norman v. Smedley* see note 7, supra.

**20.** Title 12 O.S.2011 § 93 see note 8, supra. Title 60 O.S.2011 § 333 see note 8, supra.

**21.** *Francis v. Rogers*, see note 6, supra; *Willis v. Holley*, see note 9, supra; *Norman v. Smedley*, see note 7, supra; *Sudheimer v. Cheatham*, see note 9, supra.

**22.** *Willis v. Holley*, see note 9, supra; *Shanks v. Collins*, see note 6, supra; *Tindle v. Linville*, see note 12, supra.